IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELE SILER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 1-04-1161-JDT-sta |
| v. | ) | JUDGE TODD |
| | ) | MAGISTRATE ANDERSON |
| FIRST STATE BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT _____ PRETRIAL ORDER

In accordance with the Court's "Order Setting Case for Trial" (R.12), the parties submit the following Pretrial Order.

**A.     Parties**

Michele Siler ("Siler") is the plaintiff.  First State Bank ("the Bank") is the defendant.

**B.     Pleadings**

The pleadings in the case are amended to conform to this Order, and this Order supplants those pleadings.

**C.     Jurisdiction**

This is an action brought pursuant to the Equal Pay Act at 29 U.S.C. § 206(d)(1), and therefore the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**D.     Parties' Theories of the Case**

**1.     Siler's Theory of the Case**

Siler sues for wage discrimination in violation of the Equal Pay Act.  As a female Vice-President/Commercial Loan Officer at Defendant's Union City Branch, Siler was paid $16,394.88 less per year than Trevor Hurst ("Hurst"), a similarly situated male Vice-

This document entered on the docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on __8/11/05__

President/Commercial Loan Officer who was hired in January 2002 to perform the exact same job at the Union City Branch.  Defendant hired Hurst as a Commercial Loan Officer with a starting salary of $60,000 in January 2002. (Gregory Aff. ¶ 3).  By comparison, Siler (who had worked for Defendant since 1996) was making $43,605.12.

Siler and Hurst were similarly situated.  Both held the same title and performed the same duties.  As a Vice President and Commercial Loan Officer, Siler's job responsibilities were to generate and manage a portfolio of commercial loans, deposits and financial products.  (Siler depo. at p.14).  Part of these responsibilities included developing new business and increasing existing business. (Id.).  According to Jody Kizer, who is now Community Bank President of Defendant's Union City Branch, Hurst performed the same job functions as Plaintiff.  (Kizer depo. at p. 52).

Accordingly, Siler has established a *prima facie* case under the Equal Pay Act by showing that she was performing substantially equal work but was being paid a lower wage. Timmer v. Michigan Dept. of Commerce, 104 F. 3d 833, 843 (6th Cir. 1997).

Once Siler establishes a prima facie case, Defendant, as an affirmative defense, must prove that the difference in pay was due to a factor other than sex.  Buntin v. Breathitt County Bd. Of Edu., 134 F.3d 796, 799 (6th Cir. 1998).

First, Defendant argues that Hurst was expected to perform additional duties, however, this is contrary to the testimony of Jody Kizer and the actual work performed by Hurst during his employment with Defendant.

Second, Defendant argues that Hurst had a Master's Degree.  Siler contends that a Master's Degree had very little value in the Union City market and certainly not enough to justify a pay differential of $16,394.88 more per year (40% of Siler's salary).  Although

- 2 -

Defendant makes the general statement that the MBA would enhance Hurst's effectiveness in structuring loans and understanding a customer's business, no specific loans have ever been cited nor has Defendant explained why understanding a customer's business would be an advantage to a loan officer.  In addition, other higher-ranking bank officials did not hold an MBA degree, which demonstrates that it was not a factor in determining pay for a Commercial Loan Officer position.

Third, Defendant argues that Hurst's prior employment experience justified the difference in pay.  Siler contends that Defendant has not provided any substantive proof to support these contentions, but merely broad generalizations gleaned from Hurst's pre-employment interview and subjective statements made by Tony Gregory, Chief Executive Officer.

Finally, Defendants attack Siler's job performance and attempts to use this as a justification for the pay disparity.  Siler adamantly denies these performance "deficiencies," however, they are irrelevant to this case.  If this case involved a comparison to two "existing" employees, one could see how comparable job performance would be a factor.  As a newly hired employee, however, Hurst's performance as a Commercial Loan Officer was not a factor in determining his starting salary of $60,000.

Based on the foregoing, Siler contends that Defendant has not met its burden by proving that the pay differential was based on reasons other than sex.

Siler filed suit and her Consent on July 22, 2004.  Accordingly, her recovery period begins on July 22, 2001, for a "willful" violation and July 22, 2002, for a "non-willful" violation.  Siler contends that Defendant committed a willful violation and is entitled to recover for the pay disparity during Hurst's entire tenure of employment with Defendant.  In addition, Siler contends

N EHP 515163 v1
2822135-000027 08/04/05

that Defendant cannot establish that it acted in good faith and with reasonable grounds to believe that it was not violating the Equal Pay Act. Accordingly, Siler is entitled to an equal amount in liquidated damages under 29 U.S.C. §216(b).

### 2. The Bank's Theory of the Case and Affirmative Defenses

#### a. The Bank's Theory of the Case

In this action, Siler has claimed that the Bank discriminated against her in violation of the Equal Pay Act by paying her less for the same job as other male employees. Her Complaint initially stated that she was asserting her claims pursuant to the Equal Pay Act "and the collective action provisions contained in 29 U.S.C. § 216(b)." (Complaint at p. 1). However, Siler has never sought Court-supervised notice inviting other employees of the Bank whom she alleged were similarly situated to join this litigation, and this litigation has remained a single-Plaintiff case based only on the Equal Pay Act.

In her deposition, Siler admitted that she was only comparing herself to Trevor Hurst ("Hurst"), a former Bank employee. (Plaintiff's Depo. at p. 28). This admission narrows the lawsuit even further to a side by side comparison of two specific employees - Siler and Hurst. Tony Gregory, who hired Hurst, expected Hurst to perform job responsibilities that were additional to those responsibilities assigned to Siler. (Deposition of Tony Gregory ("Gregory Depo.") at pp. 69-70). Accordingly, Siler cannot prove a *prima facie* claim of discrimination under the Equal Pay Act. Moreover, Hurst had a Masters of Business Administration from U.T. Martin, which Siler did not, and he had been earning a higher salary at a previous position than Siler had been earning. (Gregory Aff. at ¶ 5). Thus, even if Siler could prove a *prima facie* claim, the Bank can prove by a preponderance of the evidence that it lawfully paid Siler a lower salary than it paid Hurst based on factors other than sex.

- 4 -

Siler was employed by the Bank as a Vice President and commercial loan officer at its Union City Branch. (Gregory Aff. at ¶ 5). She was primarily responsible for originating commercial loans. (Plaintiff's Depo. at pp. 9-12). The Bank expects its commercial loan officers to call on and to entertain potential and existing customers in an effort to build rapport and generate new commercial loan business. (Plaintiff's Depo. at pp. 13-14). Siler's performance of these duties was unsatisfactory. In her 2002 performance evaluation, which was given to her in January 2003, the Bank's management counseled her regarding her need to focus on making specific efforts to develop new business. (Plaintiff's Depo. at p. 53). But despite this counseling, Siler only engaged in three client development lunches, dinners, or entertainment events during 2003. (Plaintiff's Depo. at p. 53).

Siler's performance was unsatisfactory in other areas as well. In her 2002 performance evaluation, the Bank cautioned Siler about the high dollar value of the charge offs that Siler had accumulated in her loan portfolio in 2002. (Plaintiff's Depo. at pp. 36-41). In that year, charge offs for bad loans that she had originated totaled $292,541,76, which represented 1.86% of her total loan portfolio. (Plaintiff's Depo. at p. 38, 43, Ex. 3 to Plaintiff's Depo.). In 2003, Siler's charge offs were also high, at $89,368.21, or .66% of her total loan portfolio. (Plaintiff's Depo. at pp. 38-39, 43, Ex. 3 to Plaintiff's Depo.). The ratio for both 2002 and 2003 was above the Bank's maximum of .50% required for satisfactory performance. (Plaintiff's Depo. at pp. 39, 43, Ex. 3 to Plaintiff's Depo.).

In February 2004, based on Siler's continued performance shortcomings, including her lack of adequate production and the losses derived from her portfolio, which resulted from the high charge off ratio, the Bank terminated Siler. At the time of her termination, she was making a salary of $43,605.12 per year.

- 5 -

Meanwhile, in January 2002, the Bank was looking for someone to perform some of the responsibilities that were being performed by Jody Kizer, including loan analysis and business development in the area of commercial lending. Mr. Kizer was being groomed to take the position of Community Bank President upon the completion of a merger in early 2003, and his responsibilities were being broadened to include the management of other Bank branches. (Gregory Depo. at p. 121; Deposition of Joseph Kizer ("Kizer Depo.") at pp. 32-33). Consequently he was not able to focus specifically on commercial lending. The Bank was looking for someone to take on some of Kizer's responsibilities, especially the part of commercial lending that included loan analysis and business development. (Gregory Depo. at pp. 74-75).

Trevor Hurst fit that bill. On January 16, 2002, upon the decision by Tony Gregory ("Gregory"), the Bank hired Hurst as a Vice President and commercial loan officer at its Union City Branch. (Gregory Aff. at ¶¶ 3, 5). As an Executive Vice President and Senior Loan Officer at a competitor bank, Hurst had participated in bank management and engaged in loan analysis and loan review functions. Gregory believed that this experience would enhance Hurst's effectiveness and value to the Bank. (Gregory Aff. at ¶ 4; Gregory Depo. at pp. 68-72). Additionally, Hurst had earned a Masters of Business Administration from the University of Tennessee at Martin. Gregory believed that this increased experience and education would equip Hurst to perform certain functions, such as structuring complicated loan transactions and understanding customers' business structures, that average commercial loan officers would be unable to do. (Gregory Aff. at ¶ 4; Gregory Depo. at p. 70).

Moreover, Gregory understood that Hurst's salary at his previous employer was in the range of $60,000 per year, and in an effort to attract Hurst to the Bank, Gregory offered him a

- 6 -

starting salary of $60,000. (Gregory Aff. at ¶ 3). The decision to offer Hurst the position, which included specific skill sets involving loan analysis and business development, was based on Hurst's prior employment experience, his personality, and his academic credentials. (Id.). Hurst accepted the position and proved his merit, building a loan portfolio of over $10 million. (Gregory Aff. at ¶ 7; Gregory Depo. at pp. 80-81; Deposition of Joseph Kizer ("Kizer Depo.") at pp. 74-79). He worked at the Bank until January 13, 2003, when he resigned to accept a position as Chief Financial Officer for one of the Bank's customers. (Gregory Aff. at ¶ 7; Gregory Depo. at p. 83).

In order to establish a *prima facie* case of wage discrimination, Siler must show that the Bank "pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)); accord Buntin v. Breathitt Cty Bd. of Educ., 134 F.3d 796 (6th Cir. 1998). Siler's claim for wage discrimination fails as a matter of law because she cannot prove that she and Hurst were performing equal work on jobs that required equal skill, effort, and responsibility.

Even if the Court determines that Siler has established a *prima facie* case of wage discrimination, the Bank can prove by a preponderance of the evidence that the unequal pay is justified because it meets the statutory exception that the differential is based on factors other than sex.[1] E.g., Buntin, 134 F.3d at 799; Odomes v. Nucare, Inc., 653 F.2d 246, 250 (6th Cir. 1981). The Bank's decision to pay a higher salary to Hurst was based on a legitimate business

---

[1] The four statutory exceptions to the Equal Pay Act are: (i) a seniority system; (ii) a merit system; (iii) a system which measured earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. 29 U.S.C. § 206(d)(1).

- 7 -

reason, namely the effort to increase the Bank's commercial loan business. See EEOC v. J.C. Penney Co., Inc., 843 F.2d 249, 253 (6th Cir. 1988). Gregory, who made the decision to hire Hurst and to offer him a salary of $60,000, did so based on Hurst's demonstrated skills, including his prior employment experience, his personality, and his academic credentials. (Gregory Aff. at ¶ 3). He did not consider Hurst's sex or the sex of any employee of the Bank in making the decision either to hire Hurst or to hire him at a starting salary of $60,000. (Id.). In fact, when a company negotiates a different starting salary comparable to what the individual earned at a previous job, the pay differential is based upon a factor other than sex. See Geerts v. II Stanley Co., No. 1:98-CV-696, 1999 WL 33134346, at *2 (W.D. Mich. Sept. 14, 1999). Conversely, Gregory had observed Siler's performance as a commercial loan officer at the Bank for several years and determined that paying her a salary more than $43,605.12 at that time would not be warranted. (Id. at ¶ 6).

Gregory's decision to offer Hurst $60,000 in spite of Siler's lower salary was based specifically on the comparative factors of Hurst's employment experience, personality, and academic credentials, as opposed to Siler's middling performance as a commercial loan officer, and it was in no way based on the sex of either Hurst or Siler. Hurst's success during his one year at the Bank, contrasted with Siler's failures and ultimate termination, buttress Gregory's decision and demonstrate that the Bank acted lawfully by rewarding the outstanding employee but not providing additional compensation to an employee whose performance was less than satisfactory.

In the alternative, if the Court determines that Siler has proven the elements of her claim, and that the Bank has not proven its affirmative defense, Siler's claims for wage discrimination that relate to the period of time prior to July 22, 2002, are barred by the applicable statute of

limitations. The statute of limitations that applies to Equal Pay Act claims appears at 29 U.S.C. § 255(a), and it provides for a two-year statute of limitations under ordinary circumstances. However, this statute also provides that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). Siler asserted in her Complaint that the Bank's alleged actions were willful, but in her deposition she admitted that she had no evidence that the Bank acted willfully in allegedly paying Hurst more money than she. (Plaintiff's Depo. at pp. 106-108).

Siler is also not entitled to liquidated damages under 29 U.S.C. § 216(b). The Bank can establish that it acted in good faith and with reasonable grounds to believe that it was not violating the Equal Pay Act. See Equal Employment Opportunity Commission v. City of Detroit Health Dep't, 920 F.2d 355, 358 (6th Cir. 1990) (treating issue of whether employer acted willfully as analogous to issue of whether it acted in good faith or reasonable belief that its actions were lawful under the Equal Pay Act).

### b.   The Bank's Affirmative Defenses

(i)   Siler's claims are barred in whole or in part by the applicable statute of limitations.

(ii)   Siler's claims are barred in whole or in part based on Siler's failure to state a claim upon which relief can be granted.

(iii)   Siler's claims are barred in whole or in part by the doctrine of payment.

(iv)   Siler's claims are barred insofar as the Bank was at all times acting in good faith in conformity with and in reliance on applicable law, including written administrative regulations, orders, rulings, and/or interpretations of the Equal Employment

N EHP 515163 v1
2822135-000027  08/04/05

Opportunity Commission or the Administrator of the Wage and Hour Division of the U.S. Department of Labor.

(v)     Siler's claims for liquidated damages are barred under the Portal-to-Portal Act of 1947, as amended, 29 U.S.C. § 251, *et seq.*, as the Bank was at all times acting in good faith and had reasonable grounds for believing that its actions were not in violation of applicable provisions of 29 U.S.C. § 260.

(vi)    To the extent Siler has failed to take reasonable steps to mitigate her alleged damages, her alleged damages that could have been avoided must be reduced.

(vii)   The Bank's personnel actions that are the subject of this lawsuit were taken solely for legitimate, nondiscriminatory business reasons and were based on factors other than sex.

**E.      Contested Issues of Law**

**1.      Siler's Contested Issues of Law**

a.      Whether Siler has established a *prima facie* case of wage discrimination under the Equal Pay Act;

b.      Whether Defendant has proven by a preponderance of evidence its affirmative defense that the wage differential was based on factors other than sex;

c.      Whether Defendant willfully violated the Equal Pay Act;

d.      Whether Defendant acted in good faith and with reasonable grounds to believe that it was not violating the Equal Pay Act, so as to preclude an award of liquidated damages.

**2.      The Bank's Contested Issues of Law**

a.      Is the Bank entitled to judgment as a matter of law on Siler's claim of wage discrimination because Siler has not established a *prima facie* case of wage discrimination

- 10 -

under the Equal Pay Act statute, which requires her to show that an 'employer pays different wages to employees of opposite sexes for *equal* work on jobs the performance of which requires *equal skill, effort, and responsibility*, and which are performed under similar working conditions." See Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1) (emphasis added).

       b.     Is the Bank entitled to judgment as a matter of law because it has proven by a preponderance of evidence its affirmative defense that the wage differential was based on factors other than sex? See Timmer v. Mich. Dep't of Commerce, 104 F.3d 833, 843 (6th Cir. 1997); 29 U.S.C. § 206(d)(1).

       c.     Is the Bank entitled to judgment as a matter of law that it did not engage in a "willful" violation of the Fair Labor Standards Act, thus barring claims arising from actions occurring more than two years before this lawsuit was filed? 29 U.S.C. § 255(a).

       d.     Is the Bank entitled to judgment as a matter of law that it acted in good faith and with reasonable grounds to believe that it was not violating the Equal Pay Act, such that an award of liquidated damages is not applicable? 29 U.S.C. § 260.

**F.**     **Known Evidentiary Disputes**

    1.     Any issues raised by either party's Motions in Limine, if filed.

**G.**     **Stipulations**

    1.     The parties are working on stipulations. Stipulations, if applicable, will be filed separately.

- 11 -

Entered this _10th_ day of August, 2005.

James D. Todd
Chief Judge, U.S. District Court for
the Western District of Tennessee

APPROVED FOR ENTRY:

Martin D. Holmes, Esq.
Trajan H. Carney, IV, Esq.
Stewart, Estes & Donnell
SunTrust Center, Suite 1401
424 Church Street
Nashville, Tennessee 37219
(615) 244-0020

Attorneys for Plaintiff

Lawrence S. Eastwood, Jr., Esq.
Emily H. Plotkin, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz
211 Commerce Street, Suite 1000
Nashville, Tennessee 37201
(615) 726-5600

Attorneys for Defendant First State Bank

- 12 -

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 32 in case 1:04-CV-01161 was distributed by fax, mail, or direct printing on August 11, 2005 to the parties listed.

---

Emily H. Plotkin
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ- Memphis
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Martin D. Holmes
STEWART ESTES & DONNELL
424 Church St.
Ste. 1401
Nashville, TN 37219

Lawrence S. Eastwood
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ- Johnson City
P.O. Box 3038
207 Mockingbird Lane
Johnson City, TN 37602

Honorable James Todd
US DISTRICT COURT